UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
COREY PHILLIPS,

                Plaintiffs,

   -against-

CITY OF NEW YORK, ALBERT
JACKSON, CHARLES STEWART,
and EUGENE JONNY

              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

Plaintiff Corey Phillips, by his attorneys, Lumer & Neville, as and for their Complaint, hereby alleges as follows, upon information and belief:

### PARTIES, VENUE and JURISDICTION

1. At all times hereinafter mentioned, plaintiff Corey Phillips was an adult male and a resident of Kings County in the State of New York.

2. At all relevant times hereinafter mentioned, defendant City of New York was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

3. At all relevant times hereinafter mentioned, defendant Albert Jackson whose Shield Number is 3573, was employed by the City of New York as a member of the NYPD. Jackson is sued herein in his official and individual capacities.

4. At all relevant times hereinafter mentioned, defendant Charles Stewart, whose Shield Number was 2387 and is now 2648, was employed by the City of New York as a member of the NYPD. Stewart is sued herein in his official and individual capacities.

5. At all relevant times hereinafter mentioned, defendant Eugene Jonny, whose Shield Number is 2802, was employed by the City of New York as a member of the NYPD. Jonny is sued herein in his official and individual capacities.

6. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and 42 U.S.C. § 1983.

7. Venue is properly laid, pursuant to 28 U.S.C. Section 1391, et seq., in the Eastern District of New York, where the plaintiff and defendant City of New York reside, and where the majority of the actions complained of herein occurred.

**RELEVANT FACTS**

8. At all relevant times herein, the individual defendants were members of the Narcotics Bureau Brooklyn South ("NBBS"), which is part of the NYPD's Narcotics Division.

9. On April 4, 2011, at or around 2:00 p.m., plaintiff was lawfully present in the parking lot of Ocean Towers, located in the Coney Island section of Kings County.

10. Plaintiff was in the driver's seat of a vehicle. An adult male named Julio was in the front passenger seat. No other persons were in the vehicle.

11. At or about 2:00 p.m., plaintiff drove into the parking lot, pulled into a

parking spot, and stopped his vehicle. Moments later, he observed defendants Jackson and Stewart emerge from an unmarked vehicle behind him and approach his vehicle.

12. The defendants approached plaintiff and the passenger, who were still sitting in the car, whether they had any guns in their possession. Neither plaintiff nor Julio had any weapons in their possession, and there were no weapons in the vehicle.

13. However, Julio volunteered that he had a small amount of marijuana in his sock. At one or both of the defendants' direction, he removed the marijuana from his sock and handed it to one of the defendants. Other than this marijuana, which was in Julio's personal possession, there was no contraband of any sort in the vehicle, nor was there any in plaintiff's personal possession.

14. The defendants then arrested both plaintiff and Julio. Plaintiff was placed in handcuffs and transported to a local area NYPD station house, where he was housed for a period of time before he was taken to Kings County Central Booking.

15. While plaintiff was imprisoned by the defendants, the defendants completed arrest paperwork for the seizure and arrest of plaintiff and Julio.

16. The only defendants actually present at the scene of the arrest were Jackson and Stewart. However, defendant Jonny was assigned the arrest and signed the arrest paperwork as the arresting officer.

17. This was the standard procedure within the NBBS at the time, and the assignment of the arrest by Jackson and Stewart to a detective who was not present at or involved in the arrest was made pursuant to NSSB's practices and policies concerning the

assignment of arresting officers.

18. The defendants then worked together to fabricate a story that Jackson and Stewart had seen plaintiff and Julio engaged an unusual amount of movement in the front seat of the car where they were sitting, which made the defendants suspicious that criminal activity was afoot. They further claimed that when they exited their vehicle to take a closer look at the front seat of plaintiff's car, they observed Julio handing currency to plaintiff and plaintiff handing Julio a small object. Julio then lifted this object to his nose and smelled it, at which time, Jackson, Stewart, and Jonny claimed, Jackson and Stewart were able to see that it was a small ziplock bag containing marijuana. Finally, the defendants claimed, they witnessed Julio throw the marijuana to the floor of the car when the defendants approached him, and that he picked it up and turned it over after Stewart directed him to do so.

19. This story is materially false.

20. The plaintiff and Julio were not engaged in any particular arm movements prior to the approach by the defendants, much less an unusual amount or type of movement, and nothing that the plaintiff and Julio did was suspicious in any manner.

21. Julio did not hand plaintiff any currency, nor did he do anything could reasonably be misinterpreted as doing so.

22. Plaintiff did not hand Julio anything while they were in the car, nor did he do anything that could reasonably be misinterpreted as doing so.

23. Julio did not bring any marijuana to his nose to smell while sitting in

the car, nor did he do anything that could reasonably be misinterpreted as doing so.

24. Julio did not throw any marijuana, or any other item, anywhere while sitting in the car in the parking lot that day, nor did he do anything that could reasonably be misinterpreted as doing so.

25. In actuality, when the defendants approached plaintiff and Julio, they did so without any reasonable suspicion that criminal activity was afoot. They discovered the marijuana only because Julio admitted that he had it on his person and then produced it to the defendants.

26. The defendants fabricated the story in order to justify the unlawful approach of the vehicle and interaction with the plaintiff and Julio, and to then justify the unlawful seizure and arrest of plaintiff, and to provide a basis to initiate plaintiff's prosecution.

27. Jonny then drafted the arrest paperwork, which he forwarded to the Kings County District Attorney ("KCDA").

28. Jonny also spoke with the KCDA about the arrests of plaintiff and Julio, during which he confirmed the substance of the fabricated story concerning these arrests.

29. The defendants knew and understood that the KCDA, in evaluating whether to commence a criminal prosecution against the plaintiff, was relying on the truthfulness of their statements and claims as relayed through Jonny, and was assuming that all of the defendants' factual statements were truthful in all material respects.

30. As a direct result of these allegations by the defendants' plaintiff was criminally charged by the KCDA under 2011KN026676 with multiple criminal charges alleging the sale and possession of the marijuana seized from Julio.

31. Plaintiff was kept in custody until his arraignment, which was on April 6, 2011.

32. Based entirely on the fabricated version of events provided by the defendants, the KCDA continued to maintain the criminal prosecution against plaintiff, requiring him to return to court on multiple occasions.

33. On January 30, 2013, pretrial hearings were held in the criminal case before the Hon. Evelyn J. LaPorte.

34. On March 25, 2013, Judge LaPorte ruled that the defendants lacked probable cause to arrest plaintiff and granted Corey Phillips' motion to suppress the $10 seized from plaintiff and the marijuana seized from Julio.

35. The KCDA subsequently moved to dismiss the case against plaintiff in all regards, and this action was terminated in plaintiff's favor.

36. From the date of the arrest through the dismissal of the criminal prosecution, the individual defendants continued to maintain their fabricated story.

37. At no time did any of the individual defendants attempt to modify their prior written or oral statements, nor did they ever communicate to their supervisors or to the KCDA, that any of their own statements were inaccurate, incomplete, or false or misleading in any way.

38. Each of the defendants was aware that the plaintiff had been arrested without probable cause.

39. At no time during the arrest and processing of the arrest of plaintiff, up until his arraignment, did any of the individual defendants make any effort to intervene in the unlawful arrest of Corey Phillips, or otherwise prevent, limit, or otherwise mitigate the violation of plaintiff's constitutional rights by the other defendants.

40. At no time following the plaintiff's arraignment did any of the individual defendants make any effort to intervene in the malicious prosecution of Corey Phillips and/or the denial of plaintiff's right to a fair trial through the use of fabricated evidence, or otherwise prevent, limit, or otherwise mitigate the violation of plaintiff's constitutional rights by the other defendants.

41. That at all times relevant herein, the defendants were on duty and acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

## FIRST CAUSE OF ACTION

42. Plaintiffs repeat the allegations contained in paragraphs "1" through "41" above as though stated fully herein.

43. Defendants willfully seized and arrested plaintiff without probable cause, and caused him to be imprisoned against his will.

44. Defendants fabricated evidence by deliberately lying about the

circumstances of plaintiff's arrest in order to manufacture the illusion of probable cause for his arrest and prosecution, and caused this fabricated and manufactured version of events to be communicated to the KCDA.

45. Defendants caused plaintiff's criminal prosecution to be initiated, without probable cause to believe that plaintiff could be successfully prosecuted, absent the fabricated and manufactured evidence, and did so without a just or legitimate purpose.

46. By so doing the individual defendants, individually and collectively, subjected the plaintiff to false arrest and imprisonment, denial of a fair trial, and malicious prosecution, and thereby violated, and aided and abetted in the violation of plaintiffs' rights under the United States Constitution.

47. By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused plaintiff to suffer the loss of his liberty, emotional injuries, mental anguish, and the deprivation of his constitutional rights.

## SECOND CAUSE OF ACTION

48. Plaintiffs repeat the allegations contained in paragraphs "1" through "47" above as though stated fully herein.

49. The defendants' actions in this matter were carried out in accordance with an existing plan or policy created or otherwise condoned by the municipal defendant designed to increase the number of arrests made without regard to probable cause.

50. More precisely, under this policy or plan, officers within the NBBS,

including the individual defendants, routinely arrest all persons found to be in proximity to a drug arrest that might otherwise be valid, regardless whether there was any factual basis for the charges. The arresting officer(s) would then make false statements of fact as to seeing narcotics in plain view or otherwise in the possession of each of the persons arrested.

51. The purpose of this policy or plan was to generate large numbers of arrests to help these officers, and by extension, the NYPD, create a false impression of positive activity by their officers.

52. In addition, members of the Narcotics Bureau are evaluated, at least in part, on the basis of their "activity" which is measured by the number of arrests made, search warrants secured, and other, similar criteria. Thus, members of the Narcotics Bureau routinely make arrests and engage in other police activity without sufficient legal cause in order to raise their levels of "activity" and improve the perception of their job performance.

53. The policy or plan was kept in effect from, at least, 2006 through, at least, the date of plaintiff's arrest, despite the municipal defendant's knowledge that the KCDA (and other prosecutors' offices) were not charging the individuals arrested, or otherwise not actively pursuing their prosecutions, or that there was insufficient evidence to justify the arrests and illegal searches, or that the arresting officers were seeking to bolster the arrests with false allegations, and that the KCDA often had found insufficient cause to justify the imposition of charges or continued prosecution if charges were filed.

54. Rather than take steps to abolish this plainly unconstitutional and unlawful police, the municipal defendant continued to tacitly endorse this policy of deliberate

misconduct.

55. In October 2011, following a bench trial in New York State Supreme Court, Kings County, under indictment number 06314-2008, former NYPD narcotics officer Jason Arbeeny was convicted of planting drugs on two individuals and falsifying arrest reports. Before issuing a verdict of guilty, the trial judge scolded the NYPD for what he described as a "widespread culture of corruption endemic in its drug units." The judge further stated that the testimony demonstrated that the NYPD narcotics divisions maintain a "cowboy culture" and that he was "shocked, not only by the seeming pervasive scope of misconduct but even more distressingly by the seeming casualness by which such conduct is employed."

56. Defendant City of New York created, approved or condoned the practice and policy, as carried out by the Narcotics Bureau, of making wholesale arrests without probable cause in order to create false or misleading arrest numbers.

57. By reason thereof, the municipal defendant has violated 42 U.S.C. §1983 and caused plaintiff to suffer the loss of his liberty, emotional injuries, mental anguish, and the deprivation of his constitutional rights.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

WHEREFORE, the plaintiffs demand judgment against defendants jointly and severally as follows:

i. on cause of action one, actual and punitive damages in an amount to be determined at trial;

ii. on cause of action two, actual damages in an amount to be determined at trial;

iii. statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988 and New York common law, disbursements, and costs of the action; and

iv. such other relief as the Court deems just and proper.

Dated: March 14, 2014
New York, New York

> LUMER & NEVILLE
> Attorneys for Plaintiff
> 225 Broadway, Suite 2700
> New York, New York 10007
> (212) 566-5060
>
> _____
> Michael Lumer (ML-1947)